## Dunn v. Commonwealth.

Sept. 30, 1941.

Williams & Allen for appellant.

Hubert Meredith, Attorney General, and William F. Neill,. Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

George Dunn was indicted in Wolfe county in December, 1940, for operating a motor vehicle in such a careless, reckless and negligent manner as to cause the death of Otis Kash. Upon his trial he was found guilty and his punishment fixed at two years in the penitentiary. In urging reversal of the judgment he insists

(1) that the verdict of the jury is flagrantly against the evidence; and (2) that he should have been given a peremptory instruction. Since both grounds involve the sufficiency of the evidence of Dunn's guilt, we will discuss them together.

The collision in which Kash was killed occurred about one o'clock on the morning of November 2, 1940, on Highway No. 15 between Campton and Jackson. Kash and Raymond Adams had been together for several hours prior to the collision and both were drunk or drinking. While proceeding toward Jackson in his two-seated Ford car, Kash stopped the car with the right wheels approximately one foot and a half off the paved part of the highway, leaving most of it on the traveled portion of the road. The paving of the highway is 16 feet wide at the place where the collision took place. According to Adams' testimony, some little time before the collision he and Kash went to sleep on the back seat of the car. The lights were not burning. Kash was killed instantly, and Adams sustained serious injuries. Dunn and two boys who were riding with him were injured. Both cars were damaged considerably.

None of the Commonwealth's witnesses saw the collision. Some of these witnesses were related to Kash by marriage. Several of them testified that they were attracted to the scene by the blowing of a car horn. In substance, the Commonwealth's evidence as to Dunn's guilt is that: The car, which was being driven by Dunn, a 1939 Oldsmobile coupe, struck the rear of the car belonging to Kash and knocked it some 23 steps down the highway; the speedometer on the Oldsmobile was setting at 50 miles per hour after the collision; there were tire marks on the road indicating that the brakes were set on Kash's car; and Dunn was drunk, and a half gallon jar approximately two-thirds full of moonshine whisky was found in the car which he was driving. A Commonwealth witness testified that he sold Dunn five gallons of gas shortly before the collision and that he judged him to be drunk. A doctor who treated Dunn an hour or more after the accident testified that he was "very drunk" at that time.

Dunn's version of the collision is that, as he was proceeding toward Jackson at the rate of 30 to 35 miles an hour, and as he was going down a grade where the collision took place, he met a car coming in the opposite

direction, the lights of which blinded him, and while passing that car he ran into the rear of the car belonging to Kash. He stated, of course, that he did not see the Kash car, that there were no lights burning on it, that the first thing he knew after the collision was that he reached under the hood to disconnect the horn wire and that Joe Miller, a Commonwealth witness, was standing near him and told him that Otis Kash was killed. Dunn stated that he and Kash were good friends. He testified also that he had been driving the Oldsmobile for several hours and that the speedometer was not working. He introduced proof to the effect that the impact of the collision could have jarred the speedometer indicator to the 50-mile mark. He further testified that he had not been drinking and that after the collision he took a drink of whisky on the way to a doctor's office at Campton and another on the way to Hazel Green, where he was treated by the doctor who testified that he was "very drunk" at that time. The two boys who were riding with Dunn, and who were apparently asleep or drunk at the time of the collision, testified that they had not seen Dunn drinking and that they did not know of any whisky being in the car. Another witness testified that he saw Dunn around 9:30 or 10 o'clock before the collision and that if he was drunk he did not know it. The sheriff of Wolfe county, who was introduced by Dunn, testified that he saw Dunn earlier in the evening and if he was drinking he could not tell it. This officer also testified that when he and his son went to the scene of the collision he searched both cars and found no whisky in them, and that when he went back to the scene something like an hour later someone said there was whisky in the car, and that one of the persons present picked up a jar with moonshine whisky in it and handed it to his son. Several of the Commonwealth witnesses testified in rebuttal that, when the sheriff came to the scene of the collision the second time, he said he ought to have searched the car when he was there first. Both the sheriff and his son testified that no such statement was made.

It is obvious from what has been said that Kash's own negligence put him in a position of peril, but that is not the controlling point in a case of this type. We must measure the evidence with the view of ascertaining whether or not Dunn operated his car in a grossly care-

less, negligent and wanton manner. If the case turned on the evidence, aside from the question of whether or not Dunn was drunk or drinking, we would be disposed to say it is not sufficient to sustain his guilt; but when that evidence, which has been reviewed heretofore, is coupled with the straightforward testimony of several Commonwealth witnesses that Dunn was drunk or drinking and that whisky was found in his car, we are forced to the conclusion that the verdict must be sustained. This conclusion is consistent with our holding in the recent case of Newcomb v. Commonwealth, 276 Ky. 362, 124 S. W. (2d) 486. The opinion in that case reviews some of our more recent decisions where the accused was intoxicated, as well as such rulings from other jurisdictions. It is pointed out in the Newcomb case that in some of the cases referred to therein the manner of operation of the motor vehicle itself could hardly be classified as wanton and reckless, as we have indicated in this case, but convictions were nevertheless sustained where there was evidence that the driver of the vehicle was intoxicated.

Finding no error prejudicial to the appellant's substantial rights, we are of the opinion that the judgment should be and it is affirmed.